**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Olive BELL, Defendant-Appellant.**

**No. 83–1161.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 13, 1984.

Decided Sept. 7, 1984.

---

**510**

Edward R. Kane, Asst. U.S. Atty., Las Vegas, Nev., for plaintiff-appellee.

Martin R. Boyers, Asst. Federal Public Defender, Las Vegas, Nev., for defendant-appellant.

Before WALLACE, KENNEDY, and CANBY, Circuit Judges.

KENNEDY, Circuit Judge:

The defendant was convicted on two of four counts alleging interstate transportation of stolen United States postal money orders. 18 U.S.C. § 2314 (1982). The money orders were stolen from a United States Post Office in West Virginia and were transported to Nevada on four different days. We affirm the convictions on both counts.

1. *Disclosure of Brady Materials.*

The Assistant United States Attorney truthfully stated at the start of the trial that to the best of his knowledge all potentially exculpatory information had been turned over to the defense. Unknown to him, the defendant had been interviewed by two Postal Inspectors as part of their investigation into the theft of the postal money orders. Their reports showed the defendant had been cooperative in answering questions, and had consented to and assisted in a search of her hotel room. Defense counsel moved to dismiss for failure to disclose this information.

We assume, as do the parties, that the information should have been disclosed under the authority of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and that the failure to disclose was due to the Government's negligence. We do not think, however, that reversal is necessary. Defense counsel was aware long before trial that this material existed, and yet made only conclusory allegations that *Brady* material had not been disclosed. The Assistant United States Attorney asked defense counsel to specify the nature

of the materials sought, but defense counsel refused to do so until trial had already begun. Defense counsel's explanation at the beginning of trial was coupled with a motion to dismiss based on the Government's negligent suppression of *Brady* material. The Assistant United States Attorney verified the existence of the material within 15 or 20 minutes after the defense had made its demand explicit.

/ We are left with the firm conviction that the defense was not seriously concerned with disclosure, but rather was manipulating for a dismissal. Defense counsel did not even make a motion for continuance so that the materials could be obtained. *See United States v. Miller*, 529 F.2d 1125, 1128 (9th Cir.), *cert. denied*, 426 U.S. 924, 96 S.Ct. 2634, 49 L.Ed.2d 379 (1976). Counsel cannot make a tactical choice and then claim reversible error in order to make a different choice at a second trial. *United States v. Valdivia*, 492 F.2d 199, 206 (9th Cir.1973), *cert. denied*, 416 U.S. 940, 94 S.Ct. 1945, 40 L.Ed.2d 292 (1974).

### 2. *Jurisdictional Amount.*

The 200 postal money orders that were the basis of Count IV were blank. Each money order had a maximum face value of $500, and Government agents offered to buy all 200 money orders for $3,000.

 Section 2314 requires that the stolen securities be worth $5,000 or more. 18 U.S.C. § 2314. Market value, here $3,000, is certainly one measure of value under section 2314. *United States v. Simpson*, 577 F.2d 78, 80 (9th Cir.1978); *United States v. Whetzel*, 589 F.2d 707, 710–11 (D.C.Cir.1978). But the statute defines "value" more broadly as "the face, par, or market value, whichever is the greatest." 18 U.S.C. § 2311. Each postal money order had a maximum face value of $500, and the value of 200 money orders is therefore $100,000, twenty times the jurisdictional requirement.

We also note that section 2311 defines "value" as "the aggregate value of all ... securities ... referred to in a single indictment...." *Id.* Aggregation is appropriate here since the indictment subdivides one overall scheme (the interstate transport by Bell of stolen money orders) into its constituent parts (interstate transport on four different days). *See Schaffer v. United States*, 362 U.S. 511, 517–18, 80 S.Ct. 945, 948–49, 4 L.Ed.2d 921 (1960); *United States v. Belmont*, 715 F.2d 459, 462 (9th Cir.1983), *cert. denied*, — U.S. —, 104 S.Ct. 1275, 2657, 79 L.Ed.2d 679, 81 L.Ed.2d 364 (1984). The aggregate value of all securities in the indictment well exceeds $5,000, even if the Count IV securities are valued at only $3,000, and the federal court thus properly exercised its jurisdiction.

### 3. *Interstate Transportation.*

Section 2314 prohibits the transportation of stolen securities in interstate commerce, but excludes from its coverage the transportation in interstate commerce of forged securities of the United States. 18 U.S.C. § 2314. *See also* 18 U.S.C. §§ 471, 500. The postal money orders that were the basis of Count I were forged after they had been stolen but before they crossed a state boundary. The appellant now contends that the exclusion paragraph operates to remove the transaction from the section because the instruments were forged at the time the state line was crossed.

 We have held that "[t]he well-established rule is that a defendant who relies upon an exception to a statute made by a proviso or distinct clause, whether in the same section of the statute or elsewhere, has the burden of establishing and showing that he comes within the exception." *United States v. Henry*, 615 F.2d 1223, 1234–35 (9th Cir.1980). *See also United States v. Hester*, 719 F.2d 1041, 1042–43 (9th Cir. 1983). The defendant did not rely on the exception at trial or introduce specific evidence to demonstrate its applicability, and the convictions need not be reversed on this ground.

In *United States v. Galardi*, 476 F.2d 1072 (9th Cir.), *cert. denied*, 414 U.S. 839 & 856, 94 S.Ct. 90 & 160, 38 L.Ed.2d 75 (1973), we held that when stolen postal orders

were forged before being put into foreign commerce, the exclusion for forged securities of the United States modified all of the paragraphs of section 2314. *Id.* at 1076–78. We reversed the convictions there since the evidence showed the postal orders had been forged before their entry into foreign commerce. *Id.* at 1076. The appellants here treat *Galardi* as establishing the rule that interstate (or foreign) commerce does not occur until a state line is crossed, so that initial transportation of securities in an unforged condition and within a single state is not part of an interstate journey and is not an offense under the statute. Whether this is a necessary interpretation of *Galardi,* and if so, whether it survives *McElroy v. United States,* 455 U.S. 642, 648–56, 102 S.Ct. 1332, 1336–40, 71 L.Ed.2d 522 (1982), is a question we need not address; for, as we have stated, the argument is made for the first time on appeal, and we need not entertain it.

In *Galardi,* we noted that section 2314 "is a splendid example of what happens to statutes when an exclusion or exception is taken out of context and placed with its initial subject and other existing laws in an overall revision or codification." *Galardi,* 476 F.2d at 1076. That observation remains true. The section as presently drafted puts the Government at peril in choosing whether to indict under section 2314 or to indict under sections 471 or 500, the counterfeiting statutes. In the instant case, moreover, the Government can secure a conviction under section 2314 only by making the counter-intuitive argument that the postal money orders were *not* forged when they traveled in interstate commerce. Congress should act to remedy this patchwork.

4. *Statement of Coconspirator.*

■ The trial judge allowed hearsay testimony from a coconspirator under Fed.R. Evid. 801(d)(2)(E). The defendant argues that the Government failed to make out a *prima facie* case of conspiracy and that the testimony should have been excluded. *See United States v. Layton,* 720 F.2d 548, 555 (9th Cir.1983), *cert. denied,* —— U.S.

——, 104 S.Ct. 1423, 79 L.Ed.2d 748 (1984); *United States v. Dixon,* 562 F.2d 1138, 1141 (9th Cir.1977), *cert. denied,* 435 U.S. 927, 98 S.Ct. 1494, 55 L.Ed.2d 521 (1978). On review, we "view the evidence and make inferences in a light most favorable" to the Government. *Dixon,* 562 F.2d at 1141. There was sufficient evidence to support a finding of conspiracy. Bell did not object when her coconspirator stated in her presence and hearing that they had traveled cross-country together, cashing stolen money orders as they went; Bell personally received and delivered to a federal agent the package containing the stolen money orders that were the basis of Count IV; she admitted in conversation with a federal agent that her cross-country trip with her coconspirator was financed by cashing some of the postal money orders; finally, Bell told an undercover agent that she had given one of the stolen money orders to an acquaintance, that the acquaintance had been arrested, and that she was worried that her acquaintance might talk. The evidence supported finding a conspiracy, and the statements of Bell's coconspirator were properly admitted.

AFFIRMED.