**UNITED STATES of America,**
**Plaintiff-Appellee,**

**v.**

**Freeman D. CARTER, a/k/a Daniel Brady, James Patrick Daly, and William Carson, Defendants-Appellants.**

**Nos. 85–3075, 85–3080 and 85–3082.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 5, 1986.

Decided July 31, 1986.

As Amended Nov. 13, 1986.

---

Tom Hillier, Federal Public Defender, Frederick D. Leatherman, Jr., Terrence Kellogg, Seattle, Wash., for plaintiff-appellee.

Tom Wales, Asst. U.S. Atty., Seattle, Wash., for defendants-appellants.

## AMENDED OPINION

Before WRIGHT, TANG and REINHARDT, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge.

In this appeal from convictions for conspiracy and interstate transportation of stolen record albums, we have these issues:

(1) Were five counts multiplicitous?

(2) Was the Speedy Trial Act violated?

(3) Were harsher sentences imposed because the defendants exercised their right to stand trial rather than accept a proposed plea agreement?

## FACTS

Appellants stole over 68,000 record albums from stores in the Seattle-Tacoma area over a two-year period. The stolen records were then boxed and shipped to Chicago or Boston. At least 124 separate shipments were made to those cities.

The conspirators were arrested and charged on November 28, 1984 in a six-count indictment. Count I charged conspiracy to violate 18 U.S.C. § 2314. Counts II

through VI charged substantive violations of § 2314. Shipments were aggregated so that each count would satisfy the statute's $5,000 jurisdictional requirement.

Not guilty pleas were entered and trial was set for January 14, 1985. On the trial date, the defendants pleaded guilty under an agreement. The court ordered a presentence report and scheduled sentencing. On the day of sentencing, the court stated the plea agreement would be acceptable only if restitution were to be required. Sentencing was rescheduled to allow time for calculation of the amount of restitution and for reconsideration of the pleas.

On March 6, 1985, the appellants withdrew their guilty pleas. After ruling on pretrial motions on March 8, the court scheduled trial for March 11. Conflicting schedules between defense counsel and the court calendar forced a continuance until April 22. Due to unanticipated delay caused by an intervening trial, the trial could not begin until April 30, 74 days after indictment.

The jury convicted the appellants on all six counts. They were sentenced to five years probation on Count I and ten-year concurrent terms for each of Counts II through VI. The court ordered each defendant to pay $148,171.83 in restitution.

**STANDARD OF REVIEW**

Each issue presented on appeal raises either questions of law or mixed questions of law and fact. We review these *de novo*. *See United States v. Gallardo*, 773 F.2d 1496, 1501 (9th Cir.1985); *United States v. McConney*, 728 F.2d 1195, 1201, 1204 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

**ANALYSIS**

**I. Multiplicity—Aggregation of Shipments Into Several Counts**

■ The government aggregated the shipments of stolen property to Boston in Count II. It aggregated the Chicago shipments in Counts III through VI. The Chicago counts were divided chronologically. Each substantive count satisfied the $5,000 jurisdictional requirement.[1]

Appellants contend that the aggregation and subdivision of shipments into several counts is multiplicitous. They concede that, under *Schaffer v. United States*, 362 U.S. 511, 517–18, 80 S.Ct. 945, 948–49, 4 L.Ed.2d 921 (1960), related shipments may be aggregated to meet § 2314's jurisdictional amount, but argue that only one substantive count could have been charged.[2] The government contends that each shipment is a separate transportation chargeable in a separate count but for the jurisdictional amount. It relies on *Schaffer* and the definition of value in 18 U.S.C. § 2311 to support aggregation of shipments and subdivision into several counts. Section 2314 provides in relevant part:

> Whoever transports in interstate or foreign commerce any goods ... of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud ... [s]hall be fined not more than $10,000 or imprisoned not more than ten years, or both.

18 U.S.C. § 2314.

The law is clear that the values of separate offenses may be aggregated. Section 2311 defines value in the aggregate. Further, the Supreme Court has allowed aggregation of transportations within a count if a series of shipments is so related that it may be charged as a single offense. *Schaffer*, 362 U.S. at 517, 80 S.Ct. at 949. The Court said:

> A sensible reading of the statute properly attributes to Congress the view that where the shipments have enough relationship so that they may properly be

---

**1.** This distinguishes our case from *United States v. Markus*, 721 F.2d 442, 444 (3d Cir.1983) (charges dismissed for failure to meet jurisdictional amount), cited by appellants' counsel at oral argument.

**2.** At oral argument, counsel for appellants appeared to concede that three counts would have been proper: one conspiracy count, one substantive count involving transportations to Boston and a second substantive count including shipments to Chicago.

charged as a single offense, their value may be aggregated. The Act defines 'value' in terms of that aggregate. The legislative history makes clear that the value may be computed on a 'series of transactions.'

*Id.* (footnotes omitted); *see also United States v. Belmont,* 715 F.2d 459, 462 (9th Cir.1983), *cert. denied,* 465 U.S. 1022, 104 S.Ct. 1275, 79 L.Ed.2d 679, *cert. denied,* 467 U.S. 1215, 104 S.Ct. 2657, 81 L.Ed.2d 364 (1984).

But the question we face is whether aggregable offenses also may be subdivided into separate charges. The shipment of stolen record albums was a series of transfers. Each of the 124 shipments is a separate chargeable offense under § 2314 but for the jurisdictional amount.

Other circuits have held that each transportation is a separate chargeable offense if it meets the jurisdictional amount. *United States v. Lagerquist,* 724 F.2d 693, 694–95 (8th Cir.1984) (five shipments of stolen property did not give rise to five counts because none of the counts satisfied the jurisdictional amount), *appeal after remand,* 758 F.2d 1279, 1281–82 (8th Cir. 1985) (the five shipments properly could be aggregated in one count to meet the jurisdictional amount); *United States v. Markus,* 721 F.2d 442, 444 (3d Cir.1983) (20 transportations of stolen checks gave rise to 20 counts; the court dismissed the charges because each count did not meet the jurisdictional amount).

We have held that transportation of stolen checks on different occasions gives rise to separate counts, and that it is appropriate to aggregate the values within each count to meet the jurisdictional amount. *United States v. Bell,* 742 F.2d 509, 511 (9th Cir.1984). "[T]he indictment subdivides one overall scheme (the interstate transport ... of stolen money orders) into its constituent parts (interstate transport on four different days)." *Id.* We find the

charging scheme here to be a logical extension of present case law.

The government divided 124 shipments into five counts which each include a series of related transactions and which each meet the jurisdictional amount. While all the shipments are part of one overall scheme, the government is not limited to charging only one count of violating § 2314.[3]

The indictment did not divide a single transportation into multiple offenses, but rather treated each series of transportations occurring within a specified time period as a separate offense. Since the appellants concede the logic of charging the transportations to different cities as different offenses, and since *Bell* allows subdivision of an overall scheme into its constituent parts, we have no difficulty endorsing the subdivision of the overall scheme in this case on a chronological basis. The district court correctly ruled that the counts were not multiplicitous.

**II. Speepy Trial Act**

Appellants claim that their Speedy Trial Act (STA) rights have been violated because of the 74–day delay after indictment. The court denied their motions to dismiss for STA violations, ruling that the speedy trial clock (STC) had started again under 18 U.S.C. § 3161(i) when they withdrew their guilty pleas.

Section 3161(i) provides:

If trial did not commence within the time limitation specified in section 3161 because the defendant had entered a plea of guilty or nolo contendere subsequently withdrawn to any or all charges in an indictment or information, the defendant shall be deemed indicted with respect to all charges therein contained within the meaning of section 3161, on the day the order permitting withdrawal of the plea becomes final.

18 U.S.C. § 3161(i).

The Act requires that an indicted defendant be tried within 70 days from the filing

---

3. The dissent's position that all Chicago shipments should have been included in one count, not four, overlooks the fact that each transportation is a separate offense. Further, nothing in *Schaffer* requires the government to combine all shipments having the same logical relationship.

of the indictment or the first judicial appearance, whichever is later. 18 U.S.C. § 3161(c)(1). The significant dates are these:

| | |
|---|---|
| November 28, 1984 | Indictment |
| January 14, 1985 | Original trial date; defendants entered guilty pleas |
| February 19 | Court informs defendants that plea agreement will be accepted only if it includes restitution; court gives them an opportunity to reconsider their pleas |
| March 6 | Guilty pleas withdrawn |
| April 22 | Second trial date; unanticipated delay caused by intervening trial forces continuance |
| April 26 | 70th day after indictment |
| April 30 | Trial commenced. |

Appellants argue that this case is governed by § 3161(h)(1)(I), which provides:

(h) The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:

(1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to—

...

(I) delay resulting from consideration by the court of a proposed plea agreement to be entered into by the defendant and the attorney for the Government; . . . .

It permits exclusion of time resulting from the court's consideration of a proposed plea bargain under Rule 11, Fed.R. Crim.P. It does not state that it applies to cases where a plea is withdrawn in the STA time limits. Nor does it mention withdrawn plea situations. It refers only to delays occasioned by the court's consideration of a proposed plea agreement.

The Ninth Circuit's Speedy Trial Act Guidelines are instructive. The comment to this section says:

In some courts, when a plea agreement has been reached, the defendant's guilty plea is immediately taken, subject to his right to withdraw it if the court should reject the plea agreement. In such cases, the timely taking of the plea satis-

fies the time limit to trial. *If the plea is subsequently withdrawn, the new time limit is determined under Section 3161(i).*

Guidelines to the Administration of the Speedy Trial Act of 1974, Comment to Section 3161(h)(1)(I), at 45 (1984) (emphasis added) (Guidelines).

We find that § 3161(i), rather than § 3161(h)(1)(I), governs this case. The STC *started anew* when the defendants withdrew their guilty pleas on March 6, 1985. The purpose of § 3161(i) is to prevent defendants from pleading guilty and then withdrawing the plea to thwart the time limit. *United States v. Mack*, 669 F.2d 28, 31–32 (1st Cir.1982). Legislative history makes clear that "where a defendant pleads guilty and then withdraws his plea ... the time limits commence again on the day the plea is withdrawn." S.Rep. No. 1021, 93rd Cong., 2d Sess. 27 (1974).

The Ninth Circuit Guidelines give further support, providing that "if at arraignment a defendant pleads guilty, and later is permitted by the court to withdraw his plea, the indictment is treated as having been filed at the time of such withdrawal." Section 3161(i), Guidelines at 71.

Here, entry of the pleas prevented trial from commencing on January 14, 1985, and the pleas were subsequently withdrawn when the defendants refused to pay restitution. "The Speedy Trial Act specifically provides that when a defendant pleads guilty but later withdraws that plea 'the defendant shall be deemed indicted ... on the day the order permitting withdrawal of the plea becomes final.'" *United States v. Cordero*, 668 F.2d 32, 45 (1st Cir.1981) (quoting 18 U.S.C. § 3161(i)) (footnote omitted).

Appellants contend that § 3161(i) applies only where withdrawal of the plea *causes* trial not to begin within the STA time limit. They argue that trial was delayed due to court congestion, not plea withdrawal. They cite no case law for this novel interpretation of § 3161(i). Nor have we found any.

A common sense interpretation dictates that, if entry and withdrawal of plea prevents trial as scheduled, the STC begins anew. *See United States v. Davis*, 679 F.2d 845, 849–50 (11th Cir.1982) (70–day period runs anew from the date of court order permitting plea withdrawal), *cert. denied*, 459 U.S. 1207, 103 S.Ct. 1198, 75 L.Ed.2d 441 (1983). When the defendants withdrew their guilty pleas on March 6, 1985, the STC began again under § 3161(i). Trial began on April 30, 1985, within the 70–day requirement. The court correctly denied defendants' motions to dismiss for STA violations.

### III. Sentencing

Finally, appellants urge us to remand for resentencing because of remarks made by the court at the sentencing hearing. They allege that they were penalized for exercising their constitutional right to stand trial because the court imposed five ten-year concurrent sentences plus restitution compared with a three-year term of imprisonment agreed to in the plea agreement.[4]

At sentencing, Carter's counsel requested that the sentence not exceed what had been negotiated in the earlier plea agreement. He explained:

Nothing new has happened since that, other than, of course, the assertion of the statutory right to withdraw that plea and the Constitutional right to go to trial, and obviously. I don't think anything should be imposed greater than that,....

Reporter's Transcript (RT) at 476 (July 14, 1985).

The court responded:

There's another way of looking at that, too, Mr. Hillier, with which you're completely familiar. If the facts are all established and the Government obviously has a good case and the Defendants plead guilty, the Court is entitled to give them credit for doing just exactly that. Now, I know defense counsel say, oh, no,

you're depriving them of their Constitutional rights to exercise their freedom to have a trial.

But that's not what the Court says. The Court says those who plead guilty under the facts save the Government a lot of money, all the taxpayers of the United States, and those people, those Defendants would be given credit for that fact.

*Id.* at 477.[5]

An accused may not be subjected to more severe punishment for exercising his constitutional right to stand trial. *United States v. Medina-Cervantes*, 690 F.2d 715, 716 (9th Cir.1982); *United States v. Stockwell*, 472 F.2d 1186, 1187 (9th Cir.), *cert. denied*, 411 U.S. 948, 93 S.Ct. 1924, 36 L.Ed.2d 409 (1973). "[C]ourts must not use the sentencing power as a carrot and stick to clear congested calendars, and they must not create an appearance of such a practice." *Id.*

Mere imposition of a heavier sentence, without more, does not invalidate it. Plea bargaining is an approved method of encouraging guilty pleas by offering a defendant "the certainty of a lesser punishment or the possibility of a more severe punishment." *Frank v. Blackburn*, 646 F.2d 873, 878 (5th Cir.1980) (en banc), *cert. denied*, 454 U.S. 840, 102 S.Ct. 148, 70 L.Ed.2d 123 (1981).

When a defendant voluntarily chooses to reject or withdraw from a plea bargain, he retains no right to the rejected sentence. Having rejected the offer of a lesser sentence, he assumes the risk of receiving a harsher sentence. If defendants could demand the same sentence after standing trial that was offered in exchange for a guilty plea, all incentives to plead guilty would disappear. Defendants would lose nothing by going to trial. *See id.* at 887. The reality of plea bargaining is that "[o]nce

---

**4.** The ten-year sentences were within the statutory limits.

**5.** Carter's attorney, who argued this appeal for appellants, then remarked that he had "no dispute with that." RT 477. Now appellants base their due process claim on those remarks.

the defendant elects to go to trial, all bets are off." *Id.*

When the court is involved in plea bargaining and a harsher sentence follows the breakdown in negotiations, "the record must show that no improper weight was given the failure to plead guilty." *Stockwell*, 472 F.2d at 1187–88.[6] In *Medina-Cervantes*, 690 F.2d at 716, we remanded for resentencing where the district judge stated during sentencing:

> Its [sic] obvious to me that this man wanted a trial, with all his constitutional rights, and he insisted upon them and he had them. To the cost to the government for the jury, with 40 jurors, $30 a piece is $1200, figure that transportation was $1500, cost defenders....

These statements give rise to the inference that "Medina-Cervantes was punished more severely because of his assertion of the right to trial by jury." *Id.* Similarly, in *United States v. Hutchings*, 757 F.2d 11, 13 (2d Cir.), *cert. denied*, ── U.S. ──, 105 S.Ct. 3511, 87 L.Ed.2d 640 (1985), the Second Circuit remanded for resentencing based on the court's remarks after the jury returned its guilty verdict:

> Judge Carter stated that the trial had been a "total waste of public funds and resources ... there was no defense in this case. This man was clearly and unquestionably guilty, and there should have been no trial."

In *Hutchings*, a remand was ordered because the record lacked an "unequivocal statement by the judge as to whether [the defendant's] decision to go to trial was or was not considered in imposing sentence."

---

**6.** We reject the government's contention that Judge McGovern was not involved in the plea bargain. His demand that restitution be included caused the breakdown in negotiations that led to trial.

**7.** The dissent asserts that this statement lacks factual support in the record. On the contrary, the court's remarks to each defendant at sentencing indicate familiarity with their backgrounds and family situations. Moreover, Judge McGovern recited the criminal record of Carter and Carson in considerable detail, noting, "I do have to consider these things." RT 481.

*Id.* at 14. By contrast, Judge McGovern stated unequivocally that he was not punishing appellants for going to trial.

He distinguished crediting those who plead from punishing those who do not. This distinction appears in the procedures recommended by the American Bar Association Standards for Criminal Justice, Pleas of Guilty (2d ed. 1982). The ABA Standards recognize that "[i]t is proper for the court to grant charge and sentence concessions to defendants who enter a plea of guilty or nolo contendere...." Standard 14–1.8(a); *see also Frank*, 646 F.2d at 885, 890 (quoting former ABA Standards).

■ While a judge may not sentence vindictively or punitively, he may have legitimate reasons for sentencing a defendant more severely. J. Bond, *Plea Bargaining and Guilty Pleas* § 2.7(b), at 2–21 (2d ed. 1983). The court may properly consider the details, flavor and impact upon victims of the offense as presented at trial. *Frank*, 646 F.2d at 885; *United States v. Derrick*, 519 F.2d 1, 4 (6th Cir.1975) (per curiam).

■ After a four-day trial and completion of an updated presentence report, Judge McGovern imposed lawful sentences based on the circumstances of the offense and the defendants' backgrounds, including lengthy criminal records for larceny, theft and shoplifting.[7] Doubtless he was mindful that defendants' rejection of restitution meant that they had not fully accepted responsibility for their actions. This justified a stiffer sentence than that originally

By contrast, the disputed remarks about trial costs were made in response to defense counsel's comment that nothing new had happened, except for defendants' assertion of their constitutional rights. The dissent places more reliance on these remarks as a basis for sentencing than they deserve. Instead, we elect to evaluate them in the context of the entire sentencing hearing. Given Judge McGovern's express statement that he was not punishing defendants for standing trial and given his concern for the seriousness of their extensive criminal activities, the disputed remarks cannot serve as a basis for invalidating these sentences.

proposed in the plea bargain. *See United States v. Hull*, 792 F.2d 941, 943 (9th Cir. 1986) (court could deny probation because defendant did not express remorse); *United States v. Malquist*, 791 F.2d 1399, 1402–03 (9th Cir.1986) (court could include defendant's lack of repentance in sentencing calculus); *Gollaher v. United States*, 419 F.2d 520, 530 (9th Cir.), *cert. denied*, 396 U.S. 960, 90 S.Ct. 434, 24 L.Ed.2d 424 (1969) (sentencing judge could consider extent of rehabilitation).

The record fails to show that the court improperly imposed harsher sentences as punishment for appellants' exercise of their right to stand trial. In fact, the record shows that the court expressly disavowed any such motivation. Under these circumstances, the sentences imposed were proper.

AFFIRMED.

REINHARDT, Circuit Judge, dissenting:

I dissent from Parts I and III of the majority opinion. First, the sentencing proceedings in this case raise the unrebutted inference that the district court abused its sentencing power by penalizing Carter, Daly and Carson for rejecting a plea agreement and standing on their right to trial. Therefore, under our clear precedent, we should reverse and remand for resentencing. Second, the charging scheme in this case is multiplicitous. As the government has chosen to organize the acts for charging purposes, Counts III to VI, each of which alleges a number of shipments to Chicago, constitute a single violation of 18 U.S.C. § 2314. Carter, Daly and Carson's convictions and sentences on three of those four counts should be vacated.

A. *Vindictive Sentencing*

The majority's approval of the sentencing proceedings in this case flies in the face of our decisions, and those of other circuits, prohibiting the use of the sentencing power to punish defendants for having stood trial. While paying lip service to the principle established by the relevant cases, the majority proceeds to undermine it entirely by its reliance on the purely semantic distinction between "crediting" and "punishing", or "penalizing," defendants for their decisions whether to waive the right to trial. The majority also confuses justification of the *length* of the sentence itself with justification of an *increase* in the length of a sentence once deemed to be appropriate. Given the record before us, I believe we are required to vacate Carter, Daly and Carson's sentences and remand for resentencing.

Carter, Daly and Carson decided to reject the negotiated plea agreement and to stand trial when the district court demanded that restitution be included in the plea agreement. During the sentencing hearing, defense counsel suggested that the court should not sentence appellants in excess of the sentences contained in the plea agreement which the court had approved, since with the exception of the defendants' assertion of their constitutional right to trial no new information regarding the defendants had emerged subsequent to their rejection of the plea. In response, the district judge stated that he was entitled to give credit in sentencing to defendants who, by pleading guilty, save the government and the taxpayers money.

> If the facts are all established and the Government obviously has a good case and the Defendants plead guilty, the Court is entitled to give them credit for doing just exactly that.
>
> ... The Court says those who plead guilty under the facts save the Government a lot of money, all the taxpayers of the United States, and those people, those Defendants would be given credit for that fact.

Later in the sentencing proceedings, the judge referred to Daly's history of prior convictions and read from Carter and Carson's criminal record. Appellants' full criminal records were included in the presentence report available to the court when it approved the plea bargain. The up-dated pre-sentence report at trial contained no new information about any of the appellants.

The majority correctly states the well-settled law of this and other circuits that a criminal defendant may not be subjected to more severe punishment for asserting his right to stand trial. *United States v. Medina-Cervantes*, 690 F.2d 715, 716 (9th Cir. 1982); *United States v. Stockwell*, 472 F.2d 1186, 1187 (9th Cir.), *cert. denied*, 411 U.S. 948, 93 S.Ct. 1924, 36 L.Ed.2d 409 (1973); *United States v. Hutchings*, 757 F.2d 11, 14 (2d Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 3511, 87 L.Ed.2d 640 (1985). This sentencing rule has two rationales: it avoids chilling the exercise of a constitutional right, *Stockwell*, 472 F.2d at 1187, and it acknowledges that in sentencing a defendant, a court should look solely to considerations personal to that defendant, *Stockwell*, 472 F.2d at 1188; *see also* ABA Standards For Criminal Justice § 14–1.8 and history of standard at 14.41 (1980) (the standard on consideration of plea in final disposition was revised "to emphasize that concessions should be predicated on reasons personal to the defendant rather than on explanations that are necessarily shared by all defendants who plead guilty").

The costs of conducting a trial, *Medina-Cervantes*, 690 F.2d at 716, and the congestion of the court docket, *Stockwell*, 472 F.2d at 1187, are impermissible factors in a court's sentencing decision since those factors are wholly unrelated to the defendant's personal circumstances.

In order to avoid the chilling effect that would arise from even the appearance that a judge had punished a defendant for having stood trial, *Medina-Cervantes*, 690 F.2d at 717, an appellate court is required to vacate and remand for resentencing in at least two situations. First, where a statement by the district court gives rise to the inference that a defendant is being penalized for asserting his right to trial, and the court does not explicitly rebut that inference by stating on the record legitimate reasons for its sentencing decision, the reviewing court must vacate and remand. *Id.*, 690 F.2d at 716–17. Second, where the district court itself was involved in unsuccessful plea negotiations, imposes a higher sentence after trial than it deemed appropriate prior to trial, and fails to state on the record legitimate reasons for *increasing* the sentence, we must vacate and remand, regardless of whether the district court made any statements suggesting that it was influenced in its sentencing decision by the defendant's decision to stand trial. *Stockwell*, 472 F.2d at 1187–88.

*Stockwell* requires the court to justify the *increase* in the sentence; it is not enough that the court justify the appropriateness of the sentence itself on grounds that might have been sufficient had the court imposed the sentence as an initial matter rather than subsequent to a defendant's rejection of a plea agreement. Only reasons that have emerged after the rejection of the plea bargain can justify the increase in the post-trial sentence.

The majority correctly states, *see* majority opinion at 514, that there may be legitimate reasons for sentencing a defendant more severely after trial, *United States v. Capriola*, 537 F.2d 319, 320 (9th Cir.1976); *Stockwell*, 472 F.2d at 1187,—reasons based on considerations specific to the defendant, or to the crime, that the judge has become aware of or observed subsequent to the rejection of the plea bargain. A trial often brings forth negative information concerning a defendant that a judge might otherwise remain unaware of. The judge may well form a different view of the defendant's degree of involvement in the offense, or even of his general character, after hearing testimony from and observing the defendant, or listening to the detailed evidence offered by others. There are also legitimate reasons for a court to grant sentence concessions after a plea, such as genuine contrition. *See* Standards for Criminal Justice § 14–1.8(a) (listing reasons). However, information that was known to the court when it approved a lesser sentence at the time of plea bargaining cannot later serve as the basis for an *increase* in the length of the sentence when it is imposed after trial.

In the present case, the court's statement that it was entitled to give defendants

who plead guilty credit for having saved the government and the taxpayers money raises the inference that the court took the costs of trial into account in its sentencing decision and therefore penalized Carter, Daly and Carson for their decision to stand trial. The majority attempts to avoid the rule prohibiting the punishment of a defendant for exercising the constitutional right to trial by drawing a distinction between "crediting" and "penalizing" or "punishing" that is both logically untenable and precluded by law. A disparity between the sentences of a defendant who has pled and a defendant who has stood trial may be characterized either as a "credit" or as a "penalty," depending upon whether the shorter sentence is compared to the longer or the longer to the shorter. The relationship between the two sentences, however, is identical under either characterization. Moreover, the exercise of the right to trial is chilled equally whether a defendant regards the differential treatment as a "credit" for having pled or as a "penalty" for having stood trial. Likewise, "crediting" a defendant for having saved the public money is no more based on considerations personal to that defendant than is "penalizing" or "punishing" a defendant for having cost the public money.

Our law prohibits a *"disparity* in sentences" based on a defendant's exercise of his right to stand trial, *United States v. Capriola,* 537 F.2d 319, 321 (9th Cir.1976) (emphasis added). We have not heretofore distinguished a "credit" from a "penalty," because the distinction is entirely meaningless. *See Stockwell,* 472 F.2d at 1187 ("courts must not use the sentencing power as a *carrot* and stick to clear congested calendars, and they must not create an appearance of such a practice") (emphasis added). Neither has any other federal appellate court.[1]

Here, we are required under both *Stockwell* and *Medina-Cervantes* to vacate appellants' sentences and remand, so that the court may either ameliorate the increased sentences or state valid reasons for reimposing them. *Capriola,* 537 F.2d at 321. The district court was involved in the plea negotiations, *see* majority opinion at 513 n. 5, (*Stockwell*) *and* made a statement giving rise to the inference that Carter, Daly and Carson received substantially higher sentences because they stood trial (*Medina*). Nevertheless, the court articulated no valid reason for increasing the sentences. The majority's reliance on the court's references during sentencing to the

---

1. The majority's selective quotation from the ABA Standards for Criminal Justice to support its distinction between "crediting" and "punishing" indefensibly distorts that authority. Standard 14–1.8 unambiguously states that a court may *not* "credit" a defendant for the mere decision to plead, but may do so *only* for reasons specific to that defendant. Under the Standard, cost or cost-saving is clearly *not* a permissible consideration. The very Standard relied on by the majority precludes the decision it announces. The Standard states in its entirety:

(a) The fact that a defendant has entered a plea of guilty or nolo contendere should not, by itself alone, be considered by the court as a mitigating factor in imposing sentence. It is proper for the court to grant charge and sentence concessions to defendants who enter a plea of guilty or nolo contendere when consistent with the protection of the public, the gravity of the offense, and the needs of the defendant, and when there is substantial evidence to establish that:

(i) the defendant is genuinely contrite and has shown a willingness to assume responsibility for his or her conduct;

(ii) the concessions will make possible alternative correctional measures which are better adapted to achieving protective, deterrent, or other purposes of correctional treatment, or will prevent undue harm to the defendant from the form of conviction;

(iii) the defendant, by making public trial unnecessary, has demonstrated genuine consideration for the victims of his or her criminal activity, by desiring either to make restitution or to prevent unseemly public scrutiny or embarrassment to them; or

(iv) the defendant has given or offered cooperation when such cooperation has resulted or may result in the successful prosecution of other offenders engaged in equally serious or more serious criminal conduct.

(b) The court should not impose upon a defendant any sentence in excess of that which would be justified by any of the protective, deterrent, or other purposes of the criminal law because the defendant has chosen to require the prosecution to prove guilt at trial rather than to enter a plea of guilty or nolo contendere.

Standards for Criminal Justice § 14–1.8 (1980).

appellants' records as justification for its affirmance, *see* majority opinion at 514 and n. 7, is legally inadequate. To so rely is to equate, mistakenly, justification of a *sentence* with justification of an *increase* in a sentence. Although the appellants' records might well have justified ten-year sentences had the sentences been imposed as an initial matter, those records cannot justify the *increase* in the sentences following appellants' rejection of the plea, for two reasons; first, because all of the information was known at the plea bargaining stage of the proceedings and second, because the judge did not state that he was relying on the information as a basis for *increasing* the sentence. In fact, the court offered no reasons that were pertinent to the *increase* in sentence other than its alleged right to "credit" defendants who plead. Under such circumstances, *Stockwell* and *Medina* require us to vacate and remand. Our failure to do so is an invitation to district judges to ignore the principle the majority opinion purports to espouse. The opinion will also, unfortunately, create widespread confusion and uncertainty as to what the rule in our circuit actually is.

The majority's amendment to its original opinion, following the filing of a petition for rehearing en banc, only serves to point out how sharp the conflict with prior Ninth Circuit authority actually is. The majority has added the following to its opinion. "Doubtless [the district judge] was mindful that defendants' rejection of restitution meant that they had not fully accepted responsibility for their actions. This justified a stiffer sentence than that originally proposed in the plea bargain." (citations omitted). The patent flaw in this post-hoc rationalization is that it constitutes the majority's effort to save its opinion and not an explanation on the record by the district court of its motivation. The rule in our circuit does not permit the majority to conjure up creative explanations that the district court itself did not rely on; the law is that it is the *record* that is determinative. Nothing could be plainer than Judge Goodwin's statement in *Stockwell:* "[T]he

record must affirmatively show that the court sentenced the defendant solely upon the facts of his case and his personal history, and not as punishment for his refusal to plead guilty." 427 F.2d at 1188. The majority's belated effort to bring its opinion within the terms of that rule is wholly unavailing.

### B. *Multiplicious Indictment*

The majority's approval of a charging scheme under 18 U.S.C. § 2314 in which the jurisdictional amount provides the sole rationale for creating multiple substantive counts from a series of shipments to a single destination turns the rule of *Schaffer v. United States*, 362 U.S. 511, 517, 80 S.Ct. 945, 948–49, 4 L.Ed.2d 921 (1960), on its head. According to the majority, every time the total value of a series of shipments of stolen property passes a multiple of $5,000, a bell rings and a new federal crime is committed. I believe the majority confuses jurisdictional requirements with the substantive elements of an offense.

The Supreme Court held in *Schaffer* that "where the shipments [of stolen goods] have enough relationship so that they may properly be charged as a single offense [under section 2314], their value may be aggregated." *Id.*, 362 U.S. at 517, 80 S.Ct. at 949. Two principles regarding the constitution of a substantive offense under section 2314 may be derived from *Schaffer's* rule of aggregation. First, a series of shipments may be charged as a "single offense" *only if* the shipments have some logical relationship independent of their aggregate value. In *Schaffer*, that relationship was provided by the fact that a single defendant received all the shipments in each count. *Id.* at 518 n. 11, 80 S.Ct. at 949 n. 11. Second, if a series of shipments is sufficiently related so as to be aggregable and the government elects to aggregate a number of the shipments in the series, the series then must be charged as a "single offense" rather than as multiple offenses. The logical relationship which allows the combination of a number of related shipments also *requires* the combination

of all shipments so related. Once having relied upon a logical relationship between shipments as a basis for combination, the government must apply that logic consistently. It cannot exclude other identical shipments from the same count merely in order to multiply the number of offenses it may charge.

The rule of *Schaffer* is equally clear that aggregation of value is a permissible *consequence* of the constitution of a substantive offense from a related series of shipments; it does not itself provide the rationale for constituting a substantive offense. The five thousand dollar minimum limits the jurisdiction of the federal court to cases of a certain magnitude; it does not define the crime over which the court has jurisdiction.

Our cases have expressly followed the first principle underlying *Schaffer*'s rule of aggregation—that a series of shipments must have some logical relationship independent of their aggregate value in order to be charged as a single offense. In dictum in *United States v. Bell*, 742 F.2d 509, 511 (9th Cir.1984), we said that aggregation of value across counts in a particular indictment was appropriate, "since the indictment subdivide[d] one overall scheme (the interstate transport by Bell of stolen money orders) into its constituent parts (interstate transport on four different days)." *Id.* (citing *Schaffer*, 362 U.S. at 517–18, 80 S.Ct. at 948–49.). We assumed that each count of the indictment should be constituted independently of the jurisdictional amount, and in fact declared that each count need not even meet the jurisdictional amount. Although I believe that to dispense with the jurisdictional requirement for each count would incorrectly construe the statute and the case law, and that we should follow the Eighth and the Third Circuits in requiring that each count of a multiple count indictment satisfy the jurisdictional minimum, *see United States v. Lagerquist*, 724 F.2d 693, 694–95 (8th Cir. 1984), *appeal after remand*, 758 F.2d 1279, 1281–82 (1985); *United States v. Markus*, 721 F.2d 442, 444 (3d Cir.1983), our premise

in *Bell* that a count must consist of a logical unit was correct.

In *United States v. Belmont*, 715 F.2d 459, 462 (9th Cir.1983), we held that "[b]ecause there was only one overall conspiracy, the district court properly aggregated the value of all shipments in determining whether the jurisdictional amount required by § 2314 had been satisfied" (citing *Schaffer*, 362 F.2d at 517, 80 S.Ct. at 949). Again, we assumed both that the basis for combining a series of shipments into one offense was provided by the logical relationship among the shipments—specifically, that they constituted "only one overall conspiracy"—and that a court should determine whether the jurisdictional requirement has been met *after* finding a violation of the statute, rather than finding a violation of the statute on the basis of the jurisdictional amount.

Finally, in *Gilinsky v. United States*, 368 F.2d 487, 489 (9th Cir.1966), we held that "the allowable unit of prosecution" for the interstate transportation of forged securities under section 2314 was defined in that case by the "repeated coincidence of time and place at the inception, during the intermediate stages and at the conclusion of the transportation." *Id.* We based our holding on the so-called "rule of lenity" set out in *Bell v. United States*, 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955), which requires that where " 'Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses.' " *Gilinsky*, 368 F.2d at 490 (quoting *Bell*, 349 U.S. at 83, 75 S.Ct. at 622). Although the prohibition in section 2314 on the interstate transportation of forged securities does not contain a jurisdictional amount, our implicit requirement in *Gilinsky* that "transportation" under section 2314 be coherently defined applies equally to the prohibition on the interstate transportation of stolen goods. The mere addition of a jurisdictional requirement to the prohibition on the transport of stolen goods does not mean that the jurisdictional amount can take the

place of a logical definition of the "unit of prosecution."

Other circuits have acknowledged the principle that a series of shipments must be logically related in order to constitute a single offense. *See United States v. Markus,* 555 F.Supp. 375, 378 (D.N.J.1983), *aff'd, United States v. Markus,* 721 F.2d 442 (3d Cir.1983) ("it is permissible to aggregate a series of related transactions described in a single count so long as the series is alleged to constitute a single offense"); *United States v. Lagerquist,* 758 F.2d 1279, 1282 (8th Cir.1985) (the facts that all the fraudulently induced shipments were received, and the checks in payment issued within a two-week period, that the same pair of business partners were defrauded by each shipment and that the defendant sold each shipment to the same buyer provided "enough relationship among the transactions so that they were properly charged as a single offense").

The charging scheme presently on appeal is consistent with the first *Schaffer* principle. However, it clearly violates the second principle that, once having combined a series of shipments into a single count on the basis of some logical relationship among them, the government must combine *all* shipments having that same relationship. Although no court has previously been required to expound upon this second principle, its logic is irrefutable. Counts III to VI all charge shipments to Chicago; each count includes a number of such shipments. The common destination of the shipments within each count provides a proper basis for combining those shipments into a single count.[2] However, in the absence of some rational basis for distinguishing among the various shipments, the government cannot, merely in order to multiply the number of offenses charged, exclude from a count other shipments in the same series sent to the same destination. Here, no basis exists for distinguishing among the shipments in the four counts; any one of its shipments could have been charged in any of the counts. The bound-

aries of each count are defined solely by the aggregate value of the shipments included within them, which value meets the minimum jurisdictional requirement. To thus convert the jurisdictional requirement into the substantive definition of the crime subverts the second *Schaffer* principle and violates the "rule of lenity" by " 'turning a single transaction into multiple offenses.' " *Gilinsky,* 368 F.2d at 490 (quoting *Bell v. United States,* 349 U.S. at 83, 75 S.Ct. at 622).

The government could have properly charged two substantive counts in addition to the conspiracy count—one count consisting of the shipments to Boston, the other consisting of the shipments to Chicago. The remaining three counts are multiplicitous. The convictions and sentences on three of the four counts in Counts III to VI should be vacated. Although the district court set the sentences on those counts to run concurrently, vacation is nevertheless required. *See United States v. DeBright,* 730 F.2d 1255 (9th Cir.1984) (en banc).

---

**2.** Had each count consisted of shipments to several cities, the charging scheme would probably have violated the first *Schaffer* principle.