**UNITED STATES of America, Plaintiff,**

v.

**Nancy NEWMAN, Defendant.**

**No. CR–N–88–32–ECR.**

United States District Court,
D. Nevada.

Oct. 19, 1988.

Jeffrey B. Setness, Asst. U.S. Atty., Reno, Nev., for plaintiff.

Fran P. Archuleta, Reno, Nev., for defendant.

## ORDER

EDWARD C. REED, Jr., Chief Judge.

The matter before the Court involves an indictment charging Newman with, *inter alia*, two counts of using unauthorized access devices in violation of 18 U.S.C. § 1029(a)(2). Count Three of the indictment charges Newman with using an unauthorized Beneficial National Bank USA Mastercard to charge $3,639.93 worth of merchandise between September and December of 1985. Count Four charges Newman with using an unauthorized First Interstate Bank Mastercard and an unauthorized First Interstate Bank Visa card to charge $1,339.52 worth of merchandise between July and August of 1985. Newman contends that Counts Three and Four actually constitute a single statutory offense and cannot be charged separately.

The general test for determining whether a series of events constitute a single offense or multiple offenses focuses on the factual elements of the charged crimes. One charged count is separate and distinct from another charged count if each "requires proof of a fact that the other does not." *United States v. Segall*, 833 F.2d 144, 147 (9th Cir.1987) (citing *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932)). "So long as each offense requires the proof of a fact the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." *United States v. Gonzalez*, 800 F.2d 895, 897 (9th Cir.1986) (citing *Iannelli v. United States*, 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1293–94 n. 17, 43 L.Ed.2d 616 (1975)).

Counts Three and Four of the indictment against Newman satisfy the Ninth Circuit's "separate fact" test. These counts allege the use of different unauthorized credit cards to make separate purchases over different periods of time. Thus, to prove Count Four, the Government would have to show facts separate and distinct from the factual matters necessary to prove Count Three.

Nevertheless, Newman contends that the "unit of prosecution" under the unauthorized credit card statute precludes her from being charged with two counts. The statute prohibits an individual from fraudulently using "one or more unauthorized access devices during any one-year period, and by such conduct obtain[ing] anything of value aggregating $1,000 or more during that period." 18 U.S.C. § 1029(a)(2). Newman argues that this statute forbids a "course of conduct" and not individual transactions. She argues that the statute authorizes the charging of separate crimes on the basis of each one-year period, not on the basis of

separate credit cards or separate value aggregations of $1,000.

In light of legislative history and judicial precedent, however, we must reject Newman's interpretation of the statute. The purpose of the one-year provision in the statute is not to define separate offenses on an annual basis. Congress enacted this provision and the $1,000 value requirement to serve as a threshold basis for federal jurisdiction. These provisions ensure that the charged offense is serious enough to warrant federal, rather than state, concern. *See H.Rep. No.* 98–894, 98th Cong., 2d Sess. 13, 16 *reprinted in 1984 U.S.Code Cong. & Admin. News,* 3182, 3699, 3702.

The statute's legislative history also indicates that its $1,000 value requirement, and not the one-year period in which this requirement must be met, is the key to defining separate offenses under the statute. The House Report on 18 U.S.C. § 1029(a)(2) states that the $1,000 requirement "conforms with the threshold for certain offenses under the Truth in Lending Act (15 U.S.C. § 1644)." *Id.* at 3703. The Truth in Lending Act prohibits an individual from using a "fraudulently obtained credit card to obtain money, goods, services, or anything else of value which within any one-year period has a value aggregating $1,000 or more." 15 U.S.C. § 1644(a). Prior to the enactment of 18 U.S.C. § 1029, the Truth in Lending Act was one of the primary federal means of prosecuting credit card fraud. Congress enacted the unauthorized access device statute to supplement the Truth in Lending Act and thereby broaden the scope of the federal prohibition or credit card fraud. *H.Rep. No.* 98–894, 98th Cong., 2d Sess. 5, *reprinted in 1984 U.S.Code Cong. & Admin. News* 3691. In light of the close relationship between these statutes, therefore, the applicable unit of prosecution under the Truth in Lending Act is indicative of the proper unit of prosecution under 18 U.S.C. § 1029(a)(2).

In analyzing the Truth in Lending Act, courts consistently have treated the $1,000 jurisdictional requirement as the basis for defining separate offenses. Separate counts regularly have been predicated on aggregations of separate transactions that exceed the jurisdictional minimum. Where an individual has used separate credit cards and fraudulently charged more than $1,000 on each card, courts have affirmed multiple count convictions even though all fraudulent charges occurred within the same one-year period. *See, e.g., United States v. Helgesen,* 669 F.2d 69 (2d Cir.) (affirming convictions on sixteen counts of fraudulent use of credit cards where counts involved sixteen separate cards, each of which was used during the same year to generate more than $1,000), *cert. denied,* 456 U.S. 929, 102 S.Ct. 1978, 72 L.Ed.2d 445 (1982); *United States v. Mikelberg,* 517 F.2d 246 (5th Cir.) (affirming convictions on two counts of credit card fraud where defendants used two distinct cards and charged more than the jurisdictional requirement on each during a four-month period), *cert. denied,* 424 U.S. 909, 96 S.Ct. 1104, 47 L.Ed. 2d 313 (1975).

Newman maintains, however, that the Truth in Lending Act is not analogous to the unauthorized access device statute under which she has been indicted. She argues that the prohibitions of the Truth in Lending Act apply to each "fraudulently obtained credit card," while 18 U.S.C. § 1029(a)(2) applies to *"one or more* unauthorized access devices." (emphasis added). According to Newman, this difference in wording requires the Government to charge all unauthorized credit cards used in an entire year as a single § 1029(a)(2) count.

Newman's argument completely misstates the Congressional purpose of the "one or more" phrase. Congress enacted the unauthorized access device statute to help combat our society's dramatic increase in credit card fraud. This statute was intended to broaden federal jurisdiction by filling some of the gaps in already existing laws such as the Truth in Lending Act. *H.Rep. No.* 98–894, 98th Cong., 2d Sess. 5, *reprinted in 1984 U.S.Code Cong. & Admin. News* 3691. One of these gaps was the Truth in Lending Act's requirement that *each* credit card be used to fraudulently acquire $1,000 in value. Representatives of the credit card industry informed Con-

gress that many criminal groups "stay just under this amount but use many different counterfeit or stolen cards or debit instruments." *Id.* Consequently, in enacting 18 U.S.C. § 1029(a)(2), Congress permitted the jurisdictional requirement to be satisfied by the fraudulent use of "one or more" unauthorized credit cards. This change in wording from the Truth in Lending Act, therefore, was not intended to require the Government to consolidate the use of all unauthorized, credit cards into a single count. Instead, this change was designed simply to broaden the federal government's prosecutorial reach in the area of credit card fraud. Hence, the factually distinct use of separate credit cards to make separate purchases aggregating $1,000 in value remained an appropriate basis for defining separate counts under 18 U.S.C. § 1029(a)(2).

Moreover, the Ninth Circuit recently has held that federal jurisdictional requirements are an appropriate basis for defining separate crimes. In *United States v. Carter*, 804 F.2d 508 (9th Cir.1986), the defendants had been convicted of five counts of knowingly transporting stolen goods valued at more than $5,000. These convictions arose from 124 separate shipments of stolen record albums that the defendants sent from Seattle–Tacoma to Chicago and Boston. The defendants argued that they engaged in a single course of conduct, and therefore, could be convicted on only one substantive count of illegal transportation. The Ninth Circuit reasoned, however, that each of the 124 shipments constituted a separate chargeable offense but for the jurisdictional amount. The court ruled, therefore, that once the jurisdictional amount was satisfied by aggregating several shipments, the government had alleged a valid count. *Id.* at 510–11. Hence the court upheld the government's chronologically sequential division of the shipments into five separate counts.

The principles articulated in *Carter* are directly applicable to the case at bar. The Government alleges that Newman made numerous purchases with unauthorized credit cards. The Government has divided these purchases on the basis of when the purchases were made and which credit card was used. The Government then has aggregated the purchases in these categories into two separate counts, each of which satisfies the $1,000 jurisdictional requirement. In *Carter*, the Ninth Circuit authorized the chronological aggregation of separate shipments into multiple counts on the basis of the jurisdictional value requirement. The Government in the instant case has acted in an analogous fashion, chronologically aggregating Newman's separate purchases into two counts, each of which exceeds the $1,000 jurisdictional requirement. Hence, we find that the Government did not act improperly in charging Newman with two separate violations of 18 U.S.C. § 1029(a)(2).

IT IS, THEREFORE, HEREBY ORDERED that Defendant's Motion to Compel Election or Consolidate Counts Three and Four (docket # 12) is DENIED.