[Cite as *State v. Holman*, 2018-Ohio-1373.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                        |   | JUDGES:                        |
|------------------------|---|--------------------------------|
| STATE OF OHIO          | : | Hon. John W. Wise, P.J.        |
|                        | : | Hon. W. Scott Gwin, J.         |
| Plaintiff-Appellee     | : | Hon. Craig R. Baldwin, J.      |
|                        | : |                                |
| -vs-                   | : |                                |
|                        | : | Case No. 2017CA00114           |
| ADAM M. HOLMAN         | : |                                |
|                        | : |                                |
| Defendant-Appellant    | : | O P I N I O N                  |


CHARACTER OF PROCEEDING:     Criminal appeal from the Stark County
                             Court of Common Pleas, Case
                             No.2017CR0417(A)

JUDGMENT:                    Affirmed in part; vacated in part


DATE OF JUDGMENT ENTRY:      April 9, 2018


APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

JOHN D. FERRERO                       AARON KOVALCHIK
STARK COUNTY PROSECUTOR               116 Cleveland Avenue N.W.
BY: RONALD MARK CALDWELL              Suite 808
110 Central Plaza South               Canton, OH 44702
Canton, OH  44702

*Gwin, J.,*

{¶1} Appellant Adam M. Holman ["Holman"] appeals his convictions and sentences after a jury trial in the Stark County Court of Common Pleas.

*Facts and Procedural History*

{¶2} On February 27, 2017, Massillon Police Officer Jeremy Moody was on routine patrol around 4:30 p.m. near the Viaduct on Lincoln Way in Massillon when he spotted a speeding car driven by Holman. A check of his radar device confirmed his suspicion that Holman's car was driving faster than the speed limit. As a result, Moody made a traffic stop of Holman's car. The car was not registered to Holman. As Moody approached the vehicle, Holman admitted to Moody that he did not have a license so he gave the officer his name and social security number. T. at 110. Christopher Predojev was seated in the passenger seat of the car. Doing routine background checks on both people inside the car, Officer Moody was informed that Holman's driver's license was under a financial responsibility law suspension ["FRA suspension"], and that Predojev had an active warrant for his arrest. T. at 110; 115.

{¶3} On cross-examination, Officer Moody was questioned about the FRA suspension. T. at 115-116. He was asked how did he verify the suspension. Moody testified that it was through the dispatch center. He further testified that he was not 100% sure of the nature of the suspension, but that he noted it on the ticket he gave Holman. T. at 116-117. Officer Moody testified that an FRA suspension "usually comes with a failure to provide proof of insurance…" T. at 115. In addition, dispatch had told Moody that the owner of the stopped car had prior convictions for the manufacturing of drugs. T. at 119.

**{¶4}** During the traffic stop, other police officers arrived on the scene and took Predojev into custody. In addition, Officer Moody told Holman that his car would have to be towed since he did not have a valid driver's license. Holman therefore exited his car, at which time Moody ask Holman for his consent to pat him down. Holman consented to a search of his person. T. at 111. Moody then patted Holman down and found in one of Holman's pants pocket a Marlboro Red cigarette filter, a pack of Marlboro Red cigarettes, and a Coca-Cola bottle cap with a hole drilled in the center of it. Based upon his field training and experience, Officer Moody recognized the bottle cap as a device often used in the making of methamphetamine. Both Holman and Predojev were arrested. Holman was initially charged with driving under suspension, and Predojev arrest was based on the active arrest warrant. A pat-down search incident to the arrest of Predojev uncovered a pack of little cigar-like cigarettes. T. at 129. Officer Moody further testified that Holman did not have any drugs on him when he conducted the pat down search.

**{¶5}** Because of Holman's arrest, his car was to be towed pursuant to department policy. As part of the towing process, standard policy requires an inventory search be done of the vehicle. Massillon Police Officer Lieutenant Michael Maier[1], who had responded as back up for this traffic stop, conducted this inventory search. Between the center console and the front passenger seat, Maier found a Marlboro Red cigarette pack. Instead of finding cigarettes inside this pack, however, Maier found a folded-up white coffee filter. Inside this coffee filter was a white powdery substance resembling crystal methamphetamine. This substance was later tested by Jennifer Creed of the Stark County Crime Lab, and was determined to be 1.8 grams of methamphetamine.

---

[1] Lieutenant Maier was a sergeant at the time of the traffic stop. T. at 126.

**{¶6}** Christopher Predojev testified that the methamphetamine was his and his alone, and that Holman did not know of the methamphetamine in the Marlboro Red cigarette pack. He claimed that he did not tell the police at the time that the methamphetamine was his because he was scared. He further testified that getting into the car that day with Holman was the worst decision he had made in his life. Predojev was a 49 year old who had never been in serious trouble before this incident.

**{¶7}** On rebuttal, Massillon Police Officer Jerrell Vincent testified about the background information he had when he responded to the scene. Vincent testified that Holman had been stopped for speeding, doing 44 mph in a 25-mph zone, that Holman was under a FRA suspension and that Predojev had an active arrest warrant, that the car was inventoried as part of the towing process, and that the cigarette pack with methamphetamine was found in the car between the console and the passenger seat. T. 183- 186. As part of the booking procedure for both Holman and Predojev, Vincent interviewed the men. During this interview process, Predojev told Vincent that half of the meth found in the car was his. T. 186-187.

**{¶8}** Prior to the start of Holman 's jury trial, the trial court went on the record and confirmed that Holman was turning down a plea offer where he would serve 90 to 120 days of incarceration and then enter SRCCC[2]. (T. at 7). Holman confirmed that he was indeed turning down that offer. T. at 7.

**{¶9}** The jury verdict found Holman guilty of the charged offenses. Holman was sentenced to an aggregate prison term of eleven months.

---

[2] Stark County Regional Community Correction Center.

*Assignments of Error*

**{¶10}** Holman raises three assignments of error,

**{¶11}** "I. APPELLANT'S SIXTH AMENDMENT RIGHT TO CONFRONT WITNESSES AGAINST HIM WAS VIOLATED WHEN THE TRIAL COURT PERMITTED THE ADMISSION OF HEARSAY STATEMENTS.

**{¶12}** "II. APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

**{¶13}** "III. APPELLANT'S PRISON SENTENCE WAS AN UNCONSTITUTIONAL TRIAL PENALTY."

I.

**{¶14}** In his first assignment of error, Holman contends the trial court allowed hearsay testimony that connected him to the crime of Driving under Suspension. [Appellant's Brief at 8]. The focus of his constitutional challenge is the admission of the testimony of Massillon Police Officer Jerrell Vincent that he received from police dispatch information that Holman was driving under an FRA suspension. T. 184-185. According to Holman, this alleged error violated his rights to confrontation and due process. Holman objected to the admission of this testimony, which the court overruled on the basis that the background information was not being offered to prove the truth of the matter asserted, but was instead being offered to explain Vincent's role and what he did in this investigation.

**STANDARD OF APPELLATE REVIEW.**

**{¶15}** "[A] trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the

rules of procedure and evidence." *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991). "Ordinarily, we review a trial court's hearsay rulings for an abuse of discretion. *State v. Hymore*, 9 Ohio St.2d 122, 128, 224 N.E.2d 126 (1967). However, we review de novo evidentiary rulings that implicate the Confrontation Clause. *United States v. Henderson*, 626 F.3d 326, 333 (6th Cir. 2010)." *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶97.

ISSUES FOR APPEAL

A. Whether the trial court erred as a matter of law in admitting the testimony of Officer Vincent concerning Holman's driver license suspension.

B. Whether the admission of Officer Vincent's testimony concerning Holman's driver license affected Holman's "substantial rights."

**{¶16}** Holman's objection centered upon the testimony elicited from the state's rebuttal witness. However, Officer Moody had already testified that the dispatch center had told him that Holman did not have a valid driver's license due to a FRA suspension. Holman did not object to Officer Moody's testimony on this point. On cross-examination, Officer Moody was questioned by Holman's counsel about the FRA suspension. T. at 116. He was asked how did he verify the suspension, and Moody testified that it was through the dispatch center. He further testified that he was not 100% sure of the nature of the suspension, but that he noted it on the ticket he gave Holman. T. at 116-117.

**{¶17}** We note that any error will be deemed harmless if it did not affect the accused's "substantial rights." Before constitutional error can be considered harmless, we must be able to "declare a belief that it was harmless beyond a reasonable doubt." *United States v. Chapman*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705(1967). Where

there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal. *State v. Conway,* 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶78, *citing Chapman; State v. Lytle*, 48 Ohio St.2d 391, 358 N.E.2d 623(1976), paragraph three of the syllabus, *vacated in part on other grounds Lytle v. Ohio*, 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154(1978). *See also, State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, ¶177.

**{¶18}** Assuming arguendo the trial court had excluded Officer Vincent's testimony, the jury had evidence from Officer Moody that was not objected to that Holman's driver's license was under suspension. Thus, even if error occurred in the admission of the statements by Officer Vincent, it was harmless beyond a reasonable doubt because it was merely cumulative to the testimony that Homan's driver's license was under suspension that was not objected to during the trial. Holman's first assignment of error is overruled.

II.

**{¶19}** In his second assignment of error, Holman argues that there was insufficient evidence to convict him of aggravated possession of drugs and driving under suspension. Holman further contends that the jury's findings are against the manifest weight of the evidence.

**STANDARD OF APPELLATE REVIEW.**

*A. Sufficiency of the Evidence.*

**{¶20}** The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...." This right, in conjunction with the Due Process Clause, requires that each of the material elements of

a crime be proved to a jury beyond a reasonable doubt. *Alleyne v. United States*, 570 U.S. __, 133 S.Ct. 2151, 2156, 186 L.Ed.2d 314 (2013); *Hurst v. Florida*, 136 S.Ct. 616, 621, 193 L.Ed.2d 504 (2016). The test for the sufficiency of the evidence involves a question of law for resolution by the appellate court. *State v. Walker,* 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶30. "This naturally entails a review of the elements of the charged offense and a review of the state's evidence." *State v. Richardson,* 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶13.

{¶21} When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *Walker,* at ¶30. "The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus. *State v. Poutney,* Oh. Sup. Ct. No. 2016-1255, 2018-Ohio-22, 2018 WL 328882 (Jan. 4, 2018), ¶19. Thus, "on review for evidentiary sufficiency we do not second-guess the jury's credibility determinations; rather, we ask whether, '*if believed*, [the evidence] would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001), *quoting Jenks* at paragraph two of the syllabus (emphasis added); *Walker* at ¶31. We will not "disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.'" *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 94, *quoting State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997); *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶74.

ISSUE FOR APPEAL

Whether, after viewing the evidence in the light most favorable to the prosecution, the evidence, "if believed, would convince the average mind of the defendant's guilt on each element of the crimes beyond a reasonable doubt."

a). Aggravated possession of drugs.

{¶22} Holman was indicted for aggravated possession of drugs in violation of R.C. 2925.11(A)(C)(1)(a). R.C. 2925.11 provides,

(A) No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog.

{¶23} R.C. 2925.11(C)(1)(a) states,

(C) Whoever violates division (A) of this section is guilty of one of the following:

(1) If the drug involved in the violation is a compound, mixture, preparation, or substance included in schedule I or II, with the exception of marihuana, cocaine, L.S.D., heroin, hashish, and controlled substance analogs, whoever violates division (A) of this section is guilty of aggravated possession of drugs. The penalty for the offense shall be determined as follows:

(a) Except as otherwise provided in division (C)(1)(b), (c), (d), or (e) of this section, aggravated possession of drugs is a felony of the fifth degree, and division (B) of section 2929.13 of the Revised Code applies in determining whether to impose a prison term on the offender.

**{¶24}** R.C. 2925.01(K) defines possession as follows: " 'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2901.21 provides the requirements for criminal liability and provides that possession is a "voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for sufficient time to have ended possession." R.C. 2901.21(D)(1).

**{¶25}** Possession may be actual or constructive. *State v. Butler*, 42 Ohio St.3d 174, 176, 538 N.E.2d 98(1989); *State v. Haynes*, 25 Ohio St.2d 264, 267 N.E.2d 787(1971); *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362(1982), syllabus. To establish constructive possession, the evidence must prove that the defendant was able to exercise dominion and control over the contraband. *State v. Wolery*, 46 Ohio St.2d 316, 332, 348 N.E.2d 351(1976). Dominion and control may be proven by circumstantial evidence alone. *State v. Trembly*, 137 Ohio App.3d 134, 738 N.E.2d 93(8th Dist. 2000). Circumstantial evidence that the defendant was located in very close proximity to the contraband may show constructive possession. *State v. Butler*, supra; *State v. Barr*, 86 Ohio App.3d 227, 235, 620 N.E.2d 242, 247-248(8th Dist. 1993); *State v. Morales*, 5th Dist. Licking No. 2004 CA 68, 2005-Ohio-4714, ¶50; *State v. Moses,* 5th Dist. Stark No. 2003CA00384, 2004-Ohio-4943,¶9. Ownership of the contraband need not be established in order to find constructive possession. *State v. Smith*, 9th Dist. Summit No. 20885, 2002-Ohio-3034, ¶13, *citing State v. Mann*, 93 Ohio App.3d 301, 308, 638 N.E.2d 585(8th Dist. 1993). Furthermore, possession may be individual or joint. *Wolery*, 46 Ohio

St.2d at 332, 348 N.E.2d 351. Multiple individuals may constructively possess a particular item of contraband simultaneously. *State v. Pitts*, 4th Dist. Scioto No. 99 CA 2675, 2000-Ohio-1986. The Supreme Court has held that knowledge of illegal goods on one's property is sufficient to show constructive possession. *State v. Hankerson*, 70 Ohio St.2d 87, 91, 434 N.E.2d 1362, 1365(1982), certiorari denied, 459 U.S. 870, 103 S.Ct. 155, 74 L.Ed.2d 130(1982).

{¶26} If the state relies on circumstantial evidence to prove an essential element of an offense, it is not necessary for "such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction." *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E. 2d 492(1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith*, *80 Ohio St.3d 89, 684 N.E.2d 668(1997).* "Circumstantial evidence and direct evidence inherently possess the same probative value [.]" *Jenks*, 61 Ohio St.3d at paragraph one of the syllabus. Furthermore, "[s]ince circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that i[t] weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt." *Jenks*, 61 Ohio St.3d at 272, 574 N.E. 2d 492. While inferences cannot be based on inferences, a number of conclusions can result from the same set of facts. *State v. Lott*, 51 Ohio St.3d 160, 168, 555 N.E.2d 293(1990), citing *Hurt v. Charles J. Rogers Transp. Co*, 164 Ohio St. 329, 331, 130 N.E.2d 820(1955). Moreover, a series of facts and circumstances can be employed by a jury as the basis for its ultimate conclusions in a case. *Lott,* 51 Ohio St.3d at 168, 555 N.E.2d 293, citing *Hurt,* 164 Ohio St. at 331, 130 N.E.2d 820.

{¶27} In *Ulster County Court v. Allen*, 442 U. S. 140, 99 S.Ct. 2213(1979), the United States Supreme Court upheld a statute which provided that the presence in an automobile, other than a public one, of a firearm "is presumptive evidence of its possession by all persons occupying such automobile at the time except (a) where the firearm is found upon the person of an occupant, (b) where the automobile is being operated for hire by a licensed operator or (c) if the weapon is a handgun and one of the occupants, not present under duress, has a license to have a handgun." Id. at 442 U. S. 142-143, 99 S.Ct. 2217. The Court noted that the presumption was not a mandatory; rather it was a permissive inference available only in certain circumstances. Further, the jury could ignore the presumption even if there was no affirmative proof offered in rebuttal by the accused. Id. at 160-162, 99 S.Ct. at 2226-2227. Finally, the trial judge in *Allen* explained, "that possession could be actual or constructive, but that constructive possession could not exist without the intent and ability to exercise control or dominion over the weapons." Id. at 161, 99 S.Ct. at 2226.

{¶28} The evidence produced during Holman's jury trial included a Marlboro Red cigarette box and a Marlboro filter that were found on Holman's person. In the car, a Marlboro Red cigarette box was found between the center console and the passenger seat, which contained the drugs. Holman had a Marlboro Red cigarette butt in his pocket; a second Marlboro Red cigarette butt was found on the floor of the driver side of the automobile.

{¶29} Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Holman exercised control or dominion over the drugs. We hold,

therefore, that the state met its burden of production regarding aggravated possession of drugs and accordingly, there was sufficient evidence to support Holman's conviction.

b). Driving under suspension.

**{¶30}** Holman was indicted for driving under suspension in violation of R.C. 4501.11(A), which states,

>  (A) Except as provided in division (B) of this section and in sections 4510.111 and 4510.16 of the Revised Code, no person whose driver's or commercial driver's license or permit or nonresident operating privilege has been suspended under any provision of the Revised Code, *other than Chapter 4509. of the Revised Code*, or under any applicable law in any other jurisdiction in which the person's license or permit was issued, shall operate any motor vehicle upon the public roads and highways or upon any public or private property used by the public for purposes of vehicular travel or parking within this state during the period of suspension unless the person is granted limited driving privileges and is operating the vehicle in accordance with the terms of the limited driving privileges.

Emphasis added. At trial, the state produced evidence that Holman's license was an "FRA" suspension, which the officer noted on the citation he gave to Holman. T. at 109-110; 116-117; 184-186. See also, Brief of Appellee at 5-6; 10.

**{¶31}** R.C. 4509.101 provides for a suspension of a person's driver's license for failure to maintain proof of financial responsibility:

>  (A)(1) No person shall operate, or permit the operation of, a motor vehicle in this state, unless proof of financial responsibility is maintained

continuously throughout the registration period with respect to that vehicle, or, in the case of a driver who is not the owner, with respect to that driver's operation of that vehicle.

(2) Whoever violates division (A)(1) of this section shall be subject to the following civil penalties:

(a) Subject to divisions (A)(2)(b) and (c) of this section, a class (F) suspension of the person's driver's license, commercial driver's license, temporary instruction permit, probationary license, or nonresident operating privilege for the period of time specified in division (B)(6) of section 4510.02 of the Revised Code and impoundment of the person's license.

{¶32} A suspension for driving under financial responsibility law suspension ["FRA"] is expressly exempt by the specific wording of R.C. 4501.11(A); this is necessarily true because driving under an FRA suspension is governed by R.C. 4510.16, which states,

(A) No person, whose driver's or commercial driver's license or temporary instruction permit or nonresident's operating privilege has been *suspended or canceled pursuant to Chapter 4509. of the Revised Code*, shall operate any motor vehicle within this state, or knowingly permit any motor vehicle owned by the person to be operated by another person in the state, *during the period of the suspension or cancellation, except as specifically authorized by Chapter 4509. of the Revised Code*. No person shall operate a motor vehicle within this state, or knowingly permit any motor vehicle owned by the person to be operated by another person in the state,

*during the period in which the person is required by section 4509.45 of the Revised Code to file and maintain proof of financial responsibility for a violation of section 4509.101 of the Revised Code, unless proof of financial responsibility is maintained with respect to that vehicle.*

Emphasis added. By its express terms, R.C. 4501.11(A) only applies to a driver's license that has been suspended under any provision of the Revised Code *other than the statutes governing financial responsibility.* These two statutes are *not* identical.

**{¶33}** Driving under suspension, in violation of R.C. 4510.11, is a first-degree misdemeanor. R.C. 4510.11(D)(1). Driving under an FRA suspension, in violation of R.C. 4510.16, is generally an unclassified misdemeanor, punishable by a fine up to $1,000 and up to 500 hours of community service. R.C. 4510.16(D)(1). Jail time and community residential sanctions are generally not permitted for a violation of R.C. 4510.16. R.C. 4516(D)(1). If within three years of the FRA suspension the offender previously was convicted of or pleaded guilty to two or more violations of R.C. 4510.16, the offense is a fourth-degree misdemeanor. R.C. 4510.16(D)(2). A violation of R.C. 4510.11 is an arrestable offense. *See, State v. Howard,* 11th Dist. Lake No. 2009–L–158, 2010–Ohio–2817, ¶26, but a violation of R.C. 4510.16 is not, R.C. 4509.101(D)(1)(b). *See, State v. Vineyard,* 2nd Dist. No. 25854, 2014-Ohio-3846, n. 2.

**{¶34}** In the case at bar, the jury was not instructed pursuant to R.C. 4510.16 that it must find Holman was driving during a period in which he had failed to satisfy all of the statutory requirements for reinstatement of his license from an FRA suspension. (T. at 196-198).

**{¶35}** Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could not have found beyond a reasonable doubt that Holman's operating privilege had been suspended under any provision of the Revised Code, *other than Chapter 4509.* Therefore, we find that reasonable minds could not reach the conclusion reached by the trier-of-fact.

**{¶36}** Because there was insufficient evidence that Holman violated R.C. 4501.11(A), pursuant to the authority contained in Section 3(B) (2), Article IV of the Ohio Constitution and R.C. 2953.07, Holman's conviction and sentence on Count Two of the Indictment Driving under Suspension in violation of 4501.11(A) is vacated.

*B. Manifest weight of the evidence.*

**{¶37}** As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), superseded by constitutional amendment on other grounds as stated by *State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355; *State v. Issa,* 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001).

> "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.

> \* \* \*

> "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with

the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶38} The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy*, 4th Dist. Ross No. 07CA2953, 2008–Ohio–1744, ¶ 31. Because the trier of fact sees and hears the witnesses and is particularly competent to decide whether, and to what extent, to credit the testimony of particular witnesses, the appellate court must afford substantial deference to its determinations of credibility. *Barberton v. Jenney,* 126 Ohio St.3d 5, 2010–Ohio–2420, 929 N.E.2d 1047, ¶ 20. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002–Ohio–1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999). Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer*, 4th Dist. Pickaway No. 11CA9, 2012–Ohio–1282, ¶ 24.

{¶39} Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury, but must find that " 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist.

1983). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id.

*ISSUE FOR APPEAL.*

<u>Whether the jury court clearly lost their way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered.</u>

**{¶40}** In the case at bar, Holman's defense centered upon the credibility of Christopher Predojev. Holman argues that the testimony of Predojev is credible; however, Predojev's statement to Officer Vincent that half the drugs belonged to Predojev is not credible.

**{¶41}** The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP–604, 2003–Ohio–958, ¶ 21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP–1238, 2003–Ohio–2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991), paragraph one of the syllabus*, superseded by State constitutional*

*amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 at n. 4, 684 N.E.2d 668 (1997).*

**{¶42}** In the case at bar, the jury heard the witnesses, viewed the evidence and heard Holman's attorney's arguments and explanations about Holman, Predojev and the investigating officers' actions. The jury was able to see for themselves Predojev and Vincent subject to cross-examination. Thus, a rational basis exists in the record for the jury's decision.

**{¶43}** We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury neither lost his way nor created a miscarriage of justice in convicting Holman of aggravated possession of drugs.

**{¶44}** Based upon the foregoing and the entire record in this matter we find Holman's convictions for aggravated possession of drugs is not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided that matter. The jury heard the witnesses, evaluated the evidence, and was convinced of Holman's guilty of aggravated possession of drugs.

**{¶45}** Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crime of aggravated possession of drugs in violation of R.C. 2925.11(A)(C)(1)(a) for which Holman was convicted.

<u>CONCLUSION.</u>

**{¶46}** Holman's second assignment of error is affirmed, in part and overruled in part. Holman's conviction on Count One of the Indictment aggravated possession of drugs is affirmed.

**{¶47}** Pursuant to the authority contained in Section 3(B) (2), Article IV of the Ohio Constitution and R.C. 2953.07, Holman's conviction and sentence on Count Two of the Indictment driving under suspension in violation of 4501.11(A) is vacated.

III.

**{¶48}** In his third assignment of error, Holman challenges his sentence on the ground that the trial court punished him by going to trial by imposing the aggregate eleven-month prison sentencing. According to Holman, the trial court punished him for going to trial with the eleven-month sentence instead of imposing the proffered plea offer of a jail term between 90 and 120 days.

### STANDARD OF APPELLATE REVIEW.

**{¶49}** It is axiomatic that "a defendant is guaranteed the right to a trial and should never be punished for exercising that right [.]" *State v. O'Dell*, 45 Ohio St.3d 140, 147, 543 N.E.2d 1220, 1227(1989). Thus, the augmentation of sentence based upon a defendant's decision to stand on his right to put the government to its proof rather than plead guilty is improper. *United States v. Araujo*, 539 F.2d 287(2nd Cir. 1976), *certiorari denied sub. nom. Rivera v. United States,* 429 U.S. 983, 97 S.Ct. 498, 50 L.Ed.2d 593(1979); *United States v. Hutchings*, 757 F.2d 11, 14(2nd Cir. 1985); *United States v. Derrick*, 519 F.2d 1, 3(6th Cir. 1975); *State v. Howard*, 5th Dist. Stark No. 2012CA00061, 2013-Ohio-2884, ¶81.

**{¶50}** Moreover, courts must not create the appearance that it has enhanced a defendant's sentence because he has elected to put the government to its proof. *United States v. Hutchings, supra; United States v. Stockwell*, 472 F.2d 1186, 1187(9th Cir. 1973). The chilling effect of such a practice upon standing trial would be as real as the chilling effect upon taking an appeal that arises when a defendant appeals, is reconvicted on remand, and receives a greater punishment. *State v. Morris*, 159 Ohio App.3d 775, 2005–Ohio–962, 825 N.E.2d 637 (8th 2005), ¶ 12 *citing State v. Scalf*, 126 Ohio App.3d 614, 621, 710 N.E.2d 1206 (1998) and *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *Howard,* 2013-Ohio-2884, ¶82.

**{¶51}** However, when a defendant receives a harsher sentence following his rejection of a plea offer, there is not a "reasonable likelihood" that the sentence was based on actual vindictiveness. The Ohio Supreme Court has declined to apply a presumption of vindictiveness, and instead has held that the appellant must prove actual vindictiveness. *See United States v. Wasman*, 468 U.S. 559, 569, 104 S.Ct. 3217, 82 L.Ed.2d 424(1984); *State v. Rahab,* 150 Ohio St.3d 152, 2017-Ohio-1401, 80 N.E.2d 431, ¶16.

**{¶52}** Having declined to presume that the trial court acted with vindictiveness, we begin our review of an appellant's sentence as we do in any other appeal—with the presumption that the trial court considered the appropriate sentencing criteria. *State v. O'Dell*, 45 Ohio St.3d 140,147, 543 N.E.2d 1220(1989); *State v. Rahab,* 150 Ohio St.3d 152 at ¶9. We then review the entire record—the trial court's statements, the evidence adduced at trial, and the information presented during the sentencing hearing—to determine whether there is evidence of actual vindictiveness. We will reverse the

sentence only if we clearly and convincingly find the sentence is contrary to law because it was imposed as a result of actual vindictiveness on the part of the trial court. *See* R.C. 2953.08(G)(2); State v. Marcum, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1; *State v. Rahab,* 150 Ohio St.3d 152 at ¶33.

**{¶53}** Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. *See also, In re Adoption of Holcomb,* 18 Ohio St.3d 361 (1985). "Where the degree of proof required sustaining an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross,* 161 Ohio St. at 477 120 N.E.2d 118.

*ISSUE FOR APPEAL.*

<u>Whether the eleven-month prison sentence in Holman's case is clearly and convincingly contrary to law because it was imposed because of actual vindictiveness on the part of the trial court.</u>

**{¶54}** At a pretrial hearing two months before trial, the trial court discussed with Holman a plea offer from the state. In exchange for his guilty plea to the two charged offenses, the state would agree that Holman would submit a presentence investigation report ("PSI") to the trial court and let the court decide his sentence. The court could impose a community control sanction or a prison term, depending on the contents of this PSI. The following exchange occurred, at the pretrial hearing:

[COURT]: Okay. We are here for a pretrial today. There was an offer today of to do a PSI which means the Court would consider probation. The worst-case scenario - I indicated to your lawyer who's done a good job for you - - would be a ship-and-shock, a short prison term would be a possibility, or treatment at our facility, the SRCCC; because it appears, just from what I reviewed, that there is an issue of a drug problem.

We have certain opportunities that I have to tell you about. Number one, if that's rejected today, then we will go to trial. At a trial I could give more, I could give less. You're looking at 12 months in prison in this case.

Is it your intention to turn down that offer?

[HOLMAN]: Yes, Your Honor.

T. (Pretrial: March 27, 2017) at 3. Rather than threatening Holman with more time in prison should he exercise his right to a jury trial, the court was simply ensuring that he understood the choice he was making. In the case at bar, Holman cites only the following exchange in support of his argument that the trial court enhanced his sentence because he decided to exercise his right to a jury trial,

THE COURT: Okay. I just want to make sure everyone's clear. There was an offer to you of a PSI, 90 to 120 days incarcerated, excuse me, and then the SRCCC.

It's my understanding you've turned that down?

[HOLMAN]: Yes, Your Honor.

THE COURT: Okay. No problem.

T. at 7.  Again, the trial court made no threat or promise concerning sentence should Holman be found guilty of the offenses.  At sentencing the court explained,

THE COURT: Okay.  The way I understand it, there's one felony conviction of aggravated possession of drugs today.  It carries a 12-month maximum sentence and a fine of $2500.

I've reviewed the record and it's obvious to me, Mr. Holman.  I've reviewed the parameters outlined in 2929.11 through 17 of the Revised Code, including the seriousness of the offense and the recidivism factors. You have a drug problem.  And I'm not trying to be mean to you.  You have in 2014, 24 months for illegal assembly.  I see another conviction of unlawful purchase of products.  One of the goals I wanted to do in this case was get you help, because I think you really need help.

Unfortunately, you didn't want help, and as a result of that, you put me in a very awkward position.  I've reviewed your record, the facts of the case, and as a result, on the aggravated possession of drugs, I'm going to sentence you to a period of 11 months in prison.

Count Two, under the suspended license, 60 days in the local jail, run it concurrent with Count One, and you've already served that, so it would basically be moot.  Therefore, you'll be sentenced to 11 months in prison.

By sending you to prison, it will bring in the issue of what's called post-release control.  If you were to violate the terms of the Adult Parole Authority, they could impose a prison term not to exceed nine months;

multiple violations, a prison term not to exceed one half of your original sentence, and that would be discretionary for three years on that count.

T. at 236-237.

{¶55} The Ohio Supreme Court has observed,

Furthermore, as the court made clear in [*Alabama v.]Smith* 490 U.S. 794, 801-802, 104 L.Ed.2d 865, 109 S.Ct. 2201(1989)], there are legitimate reasons a defendant who rejects a plea may end up receiving a harsher sentence.   Acceptance of responsibility is an appropriate sentencing consideration.  Id. at 801, 109 S.Ct. 2201.  Moreover, a plea bargain is, after all, a bargain.  In the bargain, the prosecutor achieves certain benefits: a forgoing of the risk that the defendant will be found not guilty, relief from the burden of trying the case and a concomitant ability to devote prosecutorial resources to other cases, and limitations on the defendant's right to appeal an agreed sentence, see R.C. 2953.08(D)(1).  In return, the prosecutor is able to offer the defendant certain sentencing considerations.  Both sides exchange risk about the outcome for an enhanced degree of certainty.  For the bargain to be worth anything to the defendant (at least in most cases), the defendant must have a reasonable probability of receiving a more lenient sentence than he would following trial and conviction.

*State v. Rahab,* 150 Ohio St.3d 152, 2017-Ohio-1401, 80 N.E.2d 431, ¶17.

{¶56} Given the record before us, we are not convinced that the court sentenced Holman based on vindictiveness, rather than on the evidence of his prior record and insincere remorse.  A trial court is not forever bound to impose a sentence based upon a

pre-trial offer made in exchange for a guilty plea.  Simply because it does not honor the pre-trial offer is not, standing alone, evidence of actual vindictiveness.

{¶57}  Holman's third assignment of error is overruled.

*Conclusion.*

{¶58}  Holman's first and third assignments of error are overruled.

{¶59}  Holman's second assignment of error is affirmed, in part and overruled in part.  Holman's conviction on Count One of the Indictment Aggravated Possession of Drugs is affirmed.  Pursuant to the authority contained in Section 3(B) (2), Article IV of the Ohio Constitution and R.C. 2953.07, Holman's conviction and sentence on Count Two of the Indictment Driving under Suspension in violation of 4501.11(A) is vacated.

{¶60}  The decision of the Stark County Court of Common Pleas is affirmed, in part and vacated in part.

By Gwin, J.,

Wise, P.J., and

Baldwin, J., concur